O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE A. ANGUIANO-VASQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. ED CV 14-139-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

    On January 29, 2014, plaintiff Jose A. Anguiano-Vasquez filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents two issues for decision: (1) whether substantial evidence supports the residual functional capacity ("RFC") assessment by the administrative law judge ("ALJ"); and (2) whether the ALJ properly determined plaintiff could perform a significant number of jobs. Plaintiff's Motion for Summary Judgment ("P. Mem.") at 2-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-11.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's RFC determination is supported by substantial evidence, and the ALJ provided clear and convincing reasons for discounting plaintiff's credibility prior to determining plaintiff's RFC. In addition, because the ALJ properly determined plaintiff's RFC, the ALJ did not err at step five in posing hypotheticals consistent with that RFC to the vocational expert. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fifty-four years old on his alleged onset of disability date, had a fifth or sixth grade education in Mexico and communicates only in Spanish. AR at 24, 56, 223, 228, 260-61. His past relevant work includes employment as a construction worker and landscape laborer. *Id.* at 24, 66-67, 262.

On June 6, 2011, plaintiff applied for DIB and SSI, alleging that he has been disabled since May 7, 2008 due to damaged discs of the back. *See* AR at 48, 261. Plaintiff's applications were denied initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 115-18, 124, 126-30, 133.

On October 30, 2012, plaintiff, represented by counsel and assisted by a Spanish interpreter, appeared and testified at a hearing before the ALJ. *Id.* at 42-76. The ALJ also heard testimony from a vocational expert. *Id.* at 63-75.

2

Case 5:14-cv-00139-SP Document 20 Filed 04/03/15 Page 3 of 15 Page ID #:508

On November 9, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 10-26. Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 1-9.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 7, 2008, the alleged onset of disability date. *Id.* at 18.

At step two, the ALJ found that plaintiff suffered from the severe impairments of obesity and degenerative disc disease of the lumbar spine. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 19.

The ALJ then assessed plaintiff's RFC,[1] and determined that he had the RFC to perform medium work as defined in 20 C.F.R. §§ 416.1567(c) and 416.967(c), except that plaintiff could lift and/or carry forty pounds occasionally and twenty-five pounds frequently. *Id.* The ALJ restricted plaintiff to frequent stooping, bending, and climbing. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a construction worker and landscape laborer. *Id.* at 24.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including automobile detailer, hospital cleaner, and hand packager. *Id.* at 25. Consequently,

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 26.

The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

1992)).

## IV.

## DISCUSSION

### A. The ALJ's RFC Determination Is Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly determined plaintiff's RFC. P. Mem. at 2-10. Specifically, plaintiff contends that: (1) plaintiff suffers from severe impairments not considered by the ALJ; (2) the record does not support the ALJ's determination that plaintiff can do medium work; (3) the record does not support the ALJ's determination that plaintiff can frequently stoop, bend, and climb; and (4) the ALJ improperly discredited plaintiff's testimony. *Id.*

#### 1. Additional Impairments

Plaintiff appears to challenge the ALJ's finding that plaintiff has the severe impairments of only obesity and degenerative disc disease of the lumbar spine, arguing that plaintiff also has "problems with depression and severe headaches." P. Mem. at 2. Although plaintiff raises this argument as part of his argument challenging the ALJ's RFC determination, the determination of whether plaintiff has a severe impairment takes place at step two of five-step sequential evaluation process. An error at step two is often harmless where, as here, the ALJ found the claimant suffered from other severe impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ at step two was harmless because the step was resolved in plaintiff's favor). But what plaintiff appears to be arguing here is that the ALJ's error here was not harmless because, not only did she not find plaintiff has the severe impairments of depression and severe headaches, but in assessing plaintiff's RFC she found no limitations pertinent to depression or headaches and therefore appears not to have considered these impairments. *See* Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's

impairments, even those that are not 'severe.'").

Whether considered at step two or in assessing plaintiff's RFC, however, his argument that he suffers from the additional severe impairments of depression and severe headaches is unsupported by the record and his own argument. In support of this claim plaintiff summarizes his treatment history, but none of the medical findings plaintiff cites indicate headaches or depression. *See* P. Mem. at 2-4. Instead, plaintiff points only to evidence of his back impairment (*see id.*), which the ALJ found to be a severe impairment. AR at 18-19. There is no medical evidence of depression or headaches in the record, nor is there any evidence of treatment for these conditions. The only mention in the record of depression is in Dr. Flanagan's notes, wherein he indicates depression as part of plaintiff's "past medical history." *Id.* at 344. Importantly, Dr. Flanagan does not include depression or headaches as part of his diagnosis. *Id.* Furthermore, the other treatment notes of record make no mention of depression or headaches. *See id.* at 331, 333, 362-63, 369-82. Indeed, plaintiff did not mention these impairments during the hearing. *See id.* at 48-76.

Because there is no support in the record for these alleged impairments, the ALJ did not err in failing to consider them. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding RFC assessment where ALJ "took into account limitations for which there was record support that did not depend on [the plaintiff's] subjective complaints"); *cf. Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1966) (ALJ erred by ignoring substantial and undisputed evidence of the plaintiff's impairments).

### 2. Medium Work

The ALJ determined that plaintiff had the RFC to perform medium work, except that plaintiff could lift and/or carry forty pounds occasionally and twenty five pounds frequently. AR at 19. Plaintiff was restricted to frequent stooping,

bending, and climbing. *Id.* Plaintiff argues that the ALJ changed the requirements of medium work rather than appropriately reducing the RFC to light work. P. Mem. at 4-5. Essentially, plaintiff contends that because the ALJ determined plaintiff cannot perform the full range of medium work – specifically that he can lift only forty pounds, not fifty – he is limited to light work. *Id.* The court disagrees.

At step four, the issue is whether the claimant can return to his "former type of work," as that work is generally performed. *Pinto v. Massansari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)). In determining this issue, the ALJ must make the threshold determination as to the claimant's RFC. RFC is what a claimant can still do despite existing exertional and nonexertional limitations. *See* 20 C.F.R. § 404.1545(a)(1)*; Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Frost v. Barnhart*, 314 F.3d 359, 366 (9th Cir. 2002). There are four different exertional categories: sedentary, light, medium, and heavy work. 20 C.F.R. §§ 404.1567 and 416.967. Medium work is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). If someone can do medium work, we determine that he or she can also do . . . light work." *Id.* Light work is less demanding. It is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Plaintiff's reading of the regulations would render any person who can lift any less than fifty pounds limited to light work. But the language of the regulations themselves do not support this interpretation. Medium work as defined in the regulations involves "lifting no more than 50 pounds," thereby indicating that the ability to lift less than, but not more than, fifty pounds may still fall within the category of medium work. *See* C.F.R. § 404.1567(c). Importantly,

light work involves "lifting no more than 20 pounds," an amount which plaintiff surpasses here by being ability to lift forty pounds. *See* C.F.R. § 404.1567(b). Because plaintiff exceeds the limits of light work, the ALJ properly tailored the RFC to encompass plaintiff's limitations within the "medium work" category.

Finally, plaintiff's contention that the ALJ should have relied on the Medical-Vocational Guidelines (the "grids") is misguided. *See* P. Mem. at 5-6. Plaintiff alleges that he meets the finding for disability under the grid rules for lighter work, and that the ALJ erred by bypassing proper application of the grids. *Id.* at 6. But where a plaintiff falls in between two exertional categories, the grids are inapplicable. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) ("When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." (citations omitted)). Here, as discussed above, plaintiff's exertional limitations fall between two categories – light and medium work. As such, the ALJ properly relied on the VE. *See* AR at 24, 63-75.

### 3. Frequent stooping, bending, and climbing

Plaintiff also contends the record does not support the ALJ's finding that plaintiff can perform frequent stooping, bending, and climbing, as indicated in the RFC. P. Mem. at 11. The court disagrees and finds that substantial evidence supports the ALJ's determination with regard to this restriction.

In reaching the RFC assessment here, the ALJ gave significant weight to the opinions of consultative examiner Dr. Flanagan and treating chiropractor Dr. Montgomery, as well as the objective medical evidence. AR at 22-23. The ALJ gave little weight to Dr. Silver's functional assessment because it conflicted with the objective medical evidence and the opinions of Dr. Flanagan and Dr. Montgomery. *Id.* at 23. Dr. Flanagan completed a consultative orthopedic

evaluation of plaintiff on August 30, 2011, and noted that plaintiff had pain with axial rotation of the lumbar spine and restricted forward flexion and extension of the lumbar spine, but that plaintiff was negative for straight leg raising bilaterally in both the sitting and standing position and had normal posture and gait. *Id.* at 22, 345-46. Dr. Flanagan concluded that plaintiff could perform a full range of medium work – that is, lifting up to fifty pounds – with "no postural . . . limitations." *Id.* at 347. Dr. Montgomery was plaintiff's treating chiropractor from May 2008, following plaintiff's work-related injury, through April 2009; he diagnosed plaintiff with lumbar disc with radiculitis and bilateral leg sprain and strain. AR at 355, 357, 359, 369, 371, 373, 375, 378, 379-81. Dr. Montgomery approved plaintiff to return to work in February 2009, with the restriction that plaintiff lift a maximum of forty pounds and that he perform "no repetitive stooping, bending, or climbing." *Id.* at 355, 357. Although Dr. Montgomery's limitation with regard to stooping, bending, or climbing was not included in the RFC (*see id.* at 19), this omission is supported by the record.

First, the ALJ noted that during plaintiff's most recent appointment with Dr. Montgomery, there were minimal physical findings – namely, plaintiff was experiencing only "occasional, moderate low back pain." *Id.* at 23, 355. Second, as will be discussed more below, the ALJ found that plaintiff's statements regarding the severity of his symptoms and limitations were not completely credible. Third, this limitation contradicts the opinion of consultative examiner Dr. Flanagan, who imposed no postural limitations on plaintiff's activity. *See id.* at 347. As the ALJ noted, a chiropractor, such as Dr. Montgomery, is not an acceptable medical source. *Id.* at 23; 20 C.F.R. §§ 404.1513, 404.1527; *see Knight v. Astrue*, 32 F. Supp. 3d 210 (N.D.N.Y 2012) (chiropractor's opinion is not entitled to any special weight, instead it is an "other medical source," which may be considered in determining the severity of the claimant's impairments).

Although the ALJ gave significant weight to Dr. Montgomery's overall opinion in light of his treating relationship with plaintiff, he was not required to giving controlling weight to Dr. Montgomery's assessment. Finally, no single assessment was completely adopted as the RFC here. AR at 23. Instead, the ALJ assessed each specific restriction individually, giving plaintiff the benefit of the doubt, and determining which functional limitations were "best supported by the objective evidence as a whole." *Id.* This is permissible in light of the fact that the RFC assessment is not a medical opinion, it is an administrative finding expressly reserved to the ALJ. 20 C.F.R. §§ 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . ., the final responsibility for deciding these issues is reserved to the Commissioner").

Accordingly, substantial evidence supports the ALJ's determination with regard to this restriction.

### 4. Plaintiff's Credibility

Finally, plaintiff argues that the ALJ failed to conduct a proper credibility analysis, challenging: (1) the ALJ's construction of the RFC prior to evaluating plaintiff's credibility; (2) the ALJ's determination that plaintiff had only conservative treatment; and (3) the ALJ's consideration of plaintiff's daily activities. P. Mem. at 6-9.

The ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there

is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 17. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.

Plaintiff's claim that the ALJ improperly determined the RFC and then accepted plaintiff's testimony only to the extent it comported with the already determined RFC is without merit. *See* P. Mem. at 6. Unlike in cases, such as those plaintiff cites, where the ALJ offered a blanket rejection of plaintiff's claims that are inconsistent with the RFC, here the ALJ gave specific, detailed reasons for discounting plaintiff's testimony. *See* P. Mem. at 7 (citing *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). Specifically, the ALJ discounted plaintiff's subjective testimony on the following grounds: (1) plaintiff testified that he left work due to not getting enough hours and money, not because of his disability; (2) plaintiff's daily activities contradict his claimed impairments; (3) plaintiff's claimed impairments were not supported by plaintiff's treatment history or the objective medical evidence. AR at 20-23. Plaintiff challenges the latter two reasons given by the ALJ. P. Mem. at 6-9.

First, the ALJ noted that plaintiff did not stop working due to his

11

impairment, but because he was not getting enough hours. AR at 20; *see id.* 59-60 (plaintiff testified he returned to work following his injury but left because he was only given 10 hours of work and could not live on $9.00 per hour). This undermines plaintiff's claims that his impairments are disabling. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly discounted plaintiff's credibility where he testified that his severe diabetes was not the reason he stopped working).

The second ground provided by the ALJ for finding plaintiff less credible was that plaintiff's reported activities and demonstrated abilities contradict his alleged limitations. *Id.* at 20-21. Plaintiff contends there is nothing in the record to show he is able to sustain work activity on a consistent basis, and that his ability to carry on some activities should not detract from his credibility. P. Mem. at 8-9. It is true that "the mere fact a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if a claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" him. *Id.; see Burch*, 400 F. 3d at 676 (ALJ is permitted to consider claimant's testimony regarding daily living). Here, the ALJ noted that plaintiff's testimony regarding his daily activities exceeded what would be expected in light of his alleged symptoms and limitations. AR at 20-21; *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct."). Specifically, the ALJ noted plaintiff's ability to prepare simple meals, go grocery shopping,

drive, dress and bathe independently, go for walks, and socialize with friends and family such as by watching TV or going fishing when invited. AR at 20, 52-57. Plaintiff also testified that he went for walks and did not require an ambulatory assistive device. *Id.* at 51, 54. The ALJ properly found the capabilities required to perform many of these daily activities "replicate those necessary for obtaining and maintaining employment" and undermine the credibility of plaintiff's claimed limitations. *Id.* at 21.

Third, the ALJ found that plaintiff's treatment history and the objective medical evidence was not commensurate with his alleged degree of impairment. *Id.* at 21. The ALJ summarized plaintiff's treatment history and concluded that plaintiff's treatment was sparse, routine, and conservative. *Id.*; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (conservative treatment is a basis for discounting a plaintiff's credibility). Following his 2008 work-related injury, plaintiff began seeing Dr. Montgomery, a chiropractor. Over the course of a year, his treatment consisted of oral medication, physical therapy, chiropractic treatment, and acupuncture. AR at 21, 355-403; *see Tommasetti*, 533 F.3d at 1039-40 (physical therapy and use of ani-inflammatory medication constituted conservative treatment). At the time of the hearing plaintiff testified that he takes over the counter medication, such as Tylenol, on occasion. AR at 49-50; *see Parra*, 481 F. 3d at 751 (finding over-the-counter pain medication to be "conservative treatment," sufficient to discount claimant's testimony). Additionally, the ALJ found the objective medical evidence did not support plaintiff's complaints. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility). An MRI of plaintiff's back from 2008 showed multilevel central disc protrusions at L2-L5 and no spinal stenosis at L2-L3, but lateral recess stenosis at L4-L5 bilaterally. AR. at 21, 351-52. Additionally, plaintiff complained of only

1 occasional back pain to Dr. Silver and Dr. Montgomery. *Id.* at 21, 330-31, 355.

2 In sum, the ALJ cited multiple clear and convincing reasons to find plaintiff's subjective complaints not credible. Accordingly, the ALJ properly gave little weight to plaintiff's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding RFC assessment where ALJ "took into account limitations for which there was record support and not depend on [the plaintiff's] subjective complaints," which were properly rejected).

### B. The ALJ Did Not Err at Step Five

Finally, plaintiff contends the ALJ improperly determined plaintiff could perform a significant number of jobs. P. Mem. at 9-10. Specifically, plaintiff argues that the hypotheticals the ALJ posed to the VE omitted the limitation that plaintiff could bend only occasionally. *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a step-five finding that a claimant is not disabled, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g). To meet this burden an ALJ may pose hypotheticals to the VE based on medical assumptions supported by the record and reflecting all the claimant's limitations. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Here, the hypotheticals the ALJ posed to the VE included an individual who could do a medium range of work, but would be limited to lifting no more than forty pounds occasionally, twenty five pounds frequently, and could bend and stoop frequently. AR at 69. When plaintiff's counsel altered the hypothetical to include only occasional bending, the VE testified that none of the jobs previously

14

mentioned would be available. *Id.* at 75. But as discussed above, this limitation is not supported by the record, and the ALJ permissibly limited the hypotheticals to include only those limitations supported by the record. *See Thomas v. Barnhart*, 278 F. 3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (ALJ's hypothetical to VE "must include 'all of the claimant's functional limitations . . . supported by the record."); *Magallanes*, 881 F.2d at 756-57 (ALJ properly limited hypothetical to only those restrictions that are supported by substantial evidence in the record).

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: April 3, 2015

_____
SHERI PYM
United States Magistrate Judge